**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RONRAY HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>MONICA TSAKIRIS, et al.,<br><br>Defendants. | Civil Action<br>No. 23-20449 (CPO) (EAP)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Before the Court are Defendant Tsakiris' and Defendant Morales' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 103, 112). For the following reasons, the Court will grant in part the motions for summary judgment as to the federal claims and decline to exercise supplemental jurisdiction as to any state law claims.

## I. BACKGROUND[1]

This case arises from Plaintiff's medical care at South Woods State Prison. As the parties are intimately familiar with the facts of this case, the Court will only state those facts necessary to address the instant motions. The remaining Defendants are Nurse Practitioner Monica Tsakiris and Sergeant Jerry Morales. (*See* ECF Nos. 17, 99, 125, 146 (stipulations of dismissal)).

In July of 2021, Plaintiff ruptured his Achilles tendon while playing basketball. (ECF No. 103-6, ¶ 2; ECF No. 114-1, ¶ 2). On August 30, 2021, Plaintiff underwent surgery to repair his tendon. (ECF No. 103-6, ¶ 10; ECF No. 114-1, ¶ 10). A few days later, Plaintiff was given a wheelchair. (ECF No. 103-6, ¶ 13; ECF No. 114-1, ¶ 13). On October 29, 2021, Plaintiff met with Defendant Tsakiris, who noted minimal swelling and drainage, and no redness, but advised

[1] The Court construes the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, consistent with Federal Rule of Civil Procedure 56.

Plaintiff to return if the swelling worsened or if he developed pus, redness, or heat at the surgical site. (ECF No. 103-6, ¶¶ 14–16; ECF No. 114-1, ¶¶ 14–16). Plaintiff underwent an orthopedic consultation on November 16, 2021, during which he complained that his suture had opened, but there was no active drainage or signs of infection or inflammation. (ECF No. 103-6, ¶ 17; ECF No. 114-1, ¶ 17).

On November 30, 2021,[2] Plaintiff met with Nurse Anthony Prisco, who saw a "large amount of serosanguinous drainage on the [Plaintiff's] old dressing" and green discharge from the wound. (ECF No. 114-2, ¶¶ 6, 8–9). After Nurse Prisco reported his findings to Defendant Tsakiris, they examined Plaintiff's wound. (*Id.* ¶ 11). According to Plaintiff, Defendant Tsakiris said it looked "fine" and was "supposed to drain like that," but Nurse Prisco disagreed, saying it was "looking worse" from the last time he had seen Plaintiff. (ECF No. 114-2, ¶¶ 12–13; ECF No. 114-4, at 52:1–8). On that occasion, Defendant Tsakiris refused to treat the wound. (ECF No. 114-2, ¶ 14).

In his Complaint, Plaintiff alleged that Defendant Tsakiris denied him medical care related to his foot from "December 2, 2021[,] to December 14, 2021." (ECF No. 50, ¶ 28). It is unclear what specific medical care Plaintiff is referring to, however, as the parties cite various medical visits during that period. (*See* ECF No. 114, at 8; ECF No. 114-2, ¶¶ 15–17; ECF No. 103-6, ¶¶ 33–37; ECF No. 114-1, ¶¶ 33–37). For example, Plaintiff received wound care on December 2, 5,

---

[2] On that same day, Defendant Tsakiris advised Plaintiff that his "wheelchair had to be removed pursuant to the physical therapist's recommendations," but permitted him to use the wheelchair for an additional day, pending a physical therapy evaluation. (ECF No. 103-6, ¶¶ 25–26; ECF No. 114-1, ¶¶ 25–26). Originally, Plaintiff alleged that the taking of his wheelchair amounted to deliberate indifference, *see* ECF 50, ¶¶ 23–25, 85, but it appears that Plaintiff has now abandoned that theory. (*See* ECF 114-1, ¶¶ 25–26 (agreeing that the wheelchair was taken away pursuant to a physical therapist's recommendation); ECF No. 114, at 1–8 (making no mention of the wheelchair in his opposition to summary judgment)).

and 11, and attended physical therapy on December 7 and 14. (ECF No. 114-2, ¶¶ 15–17; ECF No. 103-6, ¶¶ 33, 37; ECF No. 114-1, ¶¶ 33, 37). At his routine orthopedic consultation on December 15, 2021, Plaintiff's wound was diagnosed as infected. (ECF No. 114-2, ¶¶ 20–23). Later that month, Plaintiff underwent several procedures to address the infection. (ECF No. 114-3, at 7, 9).

Related to the events described above, Plaintiff contends that Defendant Tsakiris was deliberately indifferent to his medical needs in violation of the Eighth Amendment and sued her in her personal and official capacities. (ECF No. 50, ¶¶ 85, 87). Plaintiff also raised corresponding claims under the New Jersey Civil Rights Act. (*Id.*).

The events related to Defendant Morales occurred after Plaintiff returned[3] to South Woods State Prison on December 21, 2022. (ECF No. 128-2, ¶ 1). Shortly after his return, Plaintiff spoke with the Special Investigations Division ("SID"), reporting that he felt unsafe around Defendant Morales because of a previous encounter. (ECF No. 128-2, ¶¶ 2–4; ECF No. 128-4, at 74:1–5). At some point, Defendant Morales threatened to take Plaintiff's cane because Plaintiff spoke with the SID. (ECF No. 128-2, ¶¶ 15–16). Ultimately, Defendant Morales personally took the cane out of Plaintiff's hand. (*Id.* ¶¶ 18–19). Thereafter, on January 10, 2023, Plaintiff's leg gave out and he fell, resulting in a medical emergency. (*Id.* ¶¶ 24–25). He did not, however, sustain any "new acute injur[ies]" from that fall. (ECF No. 112-4, ¶ 16; ECF No. 128-1, ¶ 16). In further retaliation, Defendant Morales conducted several searches of Plaintiff's cell and confiscated property. (ECF No. 128-2, ¶¶ 8–13; ECF No. 128-1, ¶ 12).

---

[3] Plaintiff was transferred from Northern State Prison. (ECF No. 128-4, at 74:1–5).

Against Defendant Morales, Plaintiff raises an Eighth Amendment conditions of confinement claim and two First Amendment retaliation claims, and corresponding New Jersey Civil Rights Act claims. (ECF No. 50, ¶¶ 90–92). As to his administrative remedies, Plaintiff concedes that he has never filed a grievance regarding his claims against Defendant Morales. (*Compare* ECF No. 112-4, ¶¶ 19–23, *with* ECF No. 128-1, ¶¶ 19–23).

Plaintiff filed the operative Complaint in August of 2024. (ECF No. 50). Defendant Tsakiris and Defendant Morales filed motions for summary judgment. (ECF Nos. 103, 112). Plaintiff filed oppositions, (ECF Nos. 114, 128), and each Defendant filed a reply, (ECF Nos. 127, 129). In April of 2026, the Court notified the parties pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), that it may resolve factual disputes concerning Plaintiff's exhaustion of administrative remedies when deciding the pending motions. (ECF No. 132). Defendant Tsakiris declined to raise the issue of exhaustion, (ECF No. 135), and Defendant Morales submitted supplemental briefing in response to the *Paladino* notice, (ECF No. 143).

## II. STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see generally* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson*, 477 U.S. at 257. Where the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Plaintiff brings his remaining federal claims pursuant to 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that Defendant Tsakiris was deliberately indifferent to his medical needs in violation of the Eighth Amendment. (ECF No. 50, ¶¶ 85–87). As to Defendant Morales, Plaintiff claims that he subjected Plaintiff to conditions of confinement that violated the Eighth Amendment and retaliated against Plaintiff in violation of the First Amendment. (*Id.* ¶¶ 90–92).

### A. Defendant Tsakiris

Defendant Tsakiris moves for summary judgment, arguing that there is no evidence to show that she was deliberately indifferent to the Plaintiff's medical needs. (ECF No. 103-1, at 9–15). The Court has reviewed the submissions, (*see id.*), and finds that Defendant Tsakiris has met

her threshold burden to show "that there is an absence of evidence to support the [Plaintiff]'s case," with proper citations to the record. *See Celotex*, 477 U.S. at 325.

For the delay or denial of medical care to rise to a constitutional violation, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). More specifically, courts have found deliberate indifference where a person: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

That said, courts give deference to prison medical authorities in the diagnosis and treatment of patients and will not "second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *E.g.*, *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). As a result, allegations of medical malpractice or negligent treatment do not rise to constitutional violations. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).

Finally, a plaintiff must show that the deliberate indifference proximately caused his injury. *See, e.g.*, *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). "Absent an obvious causal relationship," a plaintiff must present "expert medical testimony on causation" in cases involving sophisticated medical issues. *Walthour v. Tennis*, No. 06-0086, 2009 WL 2957742, at *4 (M.D.

Pa. Sept. 9, 2009); *see also Thomas v. Edelman*, No. 06-1281, 2010 WL 4027779, at *2 (E.D. Pa. Oct. 14, 2010).

Here, the parties agree that Plaintiff's postoperative wound care constituted a serious medical need. (ECF No. 103-1, at 4 n.2). The dispositive question is whether Defendant Tsakiris knew of and disregarded an excessive risk to Plaintiff's health. Originally, Plaintiff alleged that Defendant Tsakiris denied him medical care from December 2 through December 14, 2021, (ECF No. 50, ¶ 28), but the parties now agree that Plaintiff received wound care and physical therapy during that period. (ECF No. 114, at 8; ECF No. 103-6, ¶¶ 33, 37; ECF No. 114-1, ¶¶ 33, 37; ECF No. 114-2, ¶¶ 15–17). Plaintiff does not identify what additional treatment he was denied. (*See* ECF No. 114, at 3–8). Accordingly, Plaintiff has not presented evidence to establish a complete denial of medical care during that period.

Instead, Plaintiff now focuses on Defendant Tsakiris' evaluation of his wound on November 30, 2021. (ECF No. 114, at 6–8). On that day, Nurse Prisco and Defendant Tsakiris inspected Plaintiff's wound. (ECF No. 114-2, ¶¶ 8, 10–12). Nurse Prisco opined the wound looked worse and presented green discharge, but Defendant Tsakiris opined it "looked fine" and was "supposed to drain like that." (ECF No. 114-2, ¶¶ 8–9, 12–13; ECF No. 114-4, at 52:1–8). Plaintiff *implies* that the discharge warranted "escalat[ing]" the situation to hospital transport. (ECF No. 114, at 7 n.1 (alleging in a footnote that "purulent or green drainage would be indicative of infection" without citing to any evidence)). He does not, however, describe the extent of the green discharge or why those circumstances required immediate hospitalization or other treatment. (*See* ECF No. 114, at 6–8; ECF No. 114-2, ¶¶ 4–14; ECF No. 114-1, ¶¶ 20, 24–28; ECF No. 103-6, ¶¶ 24–28). Since this claim involves "sophisticated medical issues," the Court cannot simply infer that treatment was necessary or what specific additional treatment was necessary or whether

Defendant Tsakiris knowingly disregarded the need for such treatment. *See, e.g.*, *Davis v. Cnty. of Cape May*, No. 17-6876, 2019 WL 4463319, at *7 (D.N.J. Sept. 18, 2019) (citing cases).

In a similar manner, Plaintiff fails to offer any evidence or explanation as to causation. For example, he does not connect Defendant Tsakiris' actions to a worsening of his condition, prolonged pain, or to treatment that could have been avoided. (*See* ECF No. 114, at 6–8; ECF No. 114-2, ¶¶ 8–30). Nor does this case involve an "obvious causal relationship," in which the injury is an "immediate and direct" result of the underlying act. *See, e.g.*, *Walthour*, 2009 WL 2957742, at *4 n.5. After Defendant Tsakiris' November 30, 2021, inspection, Plaintiff received wound care on December 2, December 5, and December 11, (ECF No. 103-6, ¶ 20; ECF No. 114-2, ¶¶ 15–17), and his wound was diagnosed as infected on December 15, 2021. (ECF No. 103-6, ¶¶ 38–40; ECF No. 114-2, ¶¶ 22–24). "Without an expert report or other competent evidence on causation," the Court cannot infer that Defendant Tsakiris' assessment worsened Plaintiff's condition or caused him to require additional procedures. *See, e.g.*, *Davis*, 2019 WL 4463319, at *9 (citing cases); *Walthour*, 2009 WL 2957742, at *4 ("Absent an obvious causal relationship, expert medical testimony on causation must be presented.").

Ultimately, Plaintiff shows only a disagreement over the "propriety or adequacy" of Defendant Tsakiris' assessment, which is insufficient to demonstrate deliberate indifference. *Pierce*, 612 F.2d at 762; *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017); *cf. Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

For all those reasons, Plaintiff has failed to show that Defendant Tsakiris was deliberately indifferent to his medical needs in violation of the Eighth Amendment.

As Plaintiff's official-capacity claim rests on the same conduct, the absence of an underlying constitutional violation defeats that claim as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that an entity cannot be liable for its officer's conduct where that conduct inflicted no constitutional injury); *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023).

Accordingly, the Court will grant summary judgment on Plaintiff's § 1983 claims against Defendant Tsakiris in both her personal and official capacities.

**B. Defendant Morales**

Defendant Morales moves for summary judgment, arguing, among other things, that the Prison Litigation Reform Act ("PLRA"), codified as 42 U.S.C. § 1997e(a), bars Plaintiff's federal claims as Plaintiff failed to exhaust his administrative remedies. (ECF No. 112-3, at 6–8; ECF 143, at 5–6). Plaintiff's remaining federal claims arise under 42 U.S.C. § 1983 and allege that Defendant Morales violated his rights under the First and Eighth Amendments. (ECF No. 50, ¶¶ 90–92).

The PLRA precludes a prisoner from contesting prison conditions in federal court until he has exhausted "all avenues of relief available to [him] within their prison's inmate grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A plaintiff must pursue to

completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the requested relief. *Id.* at 524. Failure to exhaust is an affirmative defense, and as such, defendants have the burden to prove that a plaintiff has failed to exhaust. *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013).

To determine whether a prisoner has exhausted his administrative remedies, the Court looks to the applicable grievance procedures and rules of the agency, in this case, the New Jersey Department of Corrections ("NJDOC"). *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Pursuant to the NJDOC's inmate remedy system, an inmate must use an "Inmate Grievance Form" to "address complaints and/or grievances." N.J. Admin. Code § 10A:1-4.5. If that fails to resolve the issue, then the inmate may file an "Administrative Appeal" to the prison's administrator or designee. N.J. Admin. Code § 10A:1-4.6. That appeal is the final level of administrative appeal. N.J. Admin. Code § 10A:1-4.6(d).

With those principles in mind, the Court finds that Plaintiff has failed to exhaust his administrative remedies. It is undisputed that Plaintiff did not file any grievances related to Defendant Morales' actions in the Complaint. (*Compare* ECF No. 112-4, ¶¶ 19–23, *with* ECF No. 128-1, ¶¶ 19–23). Nor was the grievance procedure unavailable to Plaintiff, as he filed numerous other grievances. (*Compare* ECF No. 112-4, ¶¶ 19–20, *with* ECF No. 128-1, ¶¶ 19–20). In his opposition, Plaintiff effectively concedes that he failed to exhaust his federal claims. (*See* ECF No. 128, at 5 (arguing only that the PLRA does not apply to his state law claims)). Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies. As a result, the PLRA bars Plaintiff's federal claims, and the Court will grant summary judgment on these claims.

Finally, as no federal claims remain in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, *i.e.*, his claims against Defendants

Tsakiris and Morales under the New Jersey Civil Rights Act. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

## V. CONCLUSION

For the foregoing reasons, Defendant Tsakiris' and Defendant Morales' motions for summary judgment are granted in part. An appropriate Order follows.

Dated: November 16, 2026

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**